IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re Rene LiVest<br><br>Debtor(s).<br><br><br>Rene LiVest<br><br>      Plaintiff,<br><br>  v.<br><br>Navient Student Loan Servicer,<br>ATTN: Bankruptcy P.O. Box 9500<br>Harrisburg, PA 18773, and<br>United States Department of Education<br>c/o US Department of Justice<br>Office of the Attorney General<br>950 Pennsylvania Ave, NW<br>Washington, DC 20530<br>      Defendants. | Chapter 7 No. 21-11409<br><br><br><br><br><br>Adv. Pro. No. |

## PLAINTIFF'S COMPLAINT

Plaintiff, Rene LiVest, files this Complaint against Defendants, Navient Student Loan Services and the United States Department of Education, on personal knowledge as to Plaintiff's own acts and upon information and belief as to all other matters, as follows:

### II.

### PARTIES

A. **Plaintiff**

    1.    Rene LiVest is a citizen of the State of Ohio , residing in the Northern District of Ohio.

B. **Defendant**

    2. Navient is a corporation headquartered in the State of Pennsylvania , and can be served at Attn: Bankruptcy P.O. Box 9500, Harrisburg, PA 18773 . The United States Department of Education, 400 Maryland Ave., SW, Washington, DC 20202,can be served at that address, and by service on the United States Attorney General at the U.S. Department of Justice

c/o US Attorney General, 950 Pennsylvania Ave., Washinton DC 20202.

## III.

## JURISDICTION AND VENUE

3. This Adversary Proceeding is brought under Case Number 21-11409.

4. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b). This is a core proceeding under title 11 because it concerns a determination as to the dischargeability of a debt.

5. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 1601, 15 U.S.C. § 1692 and Federal Rules of Bankruptcy Procedure Rule 7001.

6. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

## IV.

## FACTUAL AND PROCEDURAL BACKGROUND

A. **Background of the Problem**

7. In order to make Americans more competitive globally, the government authorized the creation of the National Defense Education Act in 1958 and the Guaranteed Student Loan Program (now the Stafford Loan) in 1965.

8. Even by the 1970s, few students needed loans to go to college. The average cost of tuition was only $2,587 and the average debt for a medical student was only $13,469. With Pell grants, scholarships, and summer jobs, even kids from lower-income backgrounds could often make it through college debt free. But largely in response to anecdotal evidence about a few dishonest lawyers filing for bankruptcy immediately after graduation, Congress made student loans presumptively non-dischargeable in bankruptcy for the first five years of repayment, unless excepting such discharge would impose an "undue hardship" on the debtor or her dependents. Although this rule was at odds with the fundamental purpose of the bankruptcy code, it was perhaps a reasonable exception as it only applied to the first five years of repayment.

9. Congress did not define "undue hardship" in 1978 but instead left that determination to the courts. Over the next thirty years, courts wrestled with meaning of "undue hardship," creating and discarding nearly a dozen tests, working within and without the text of the statute, now commingling the court's equitable powers under section 105 with the court's mandate under section 523(a)(8), now refusing to do so. Over time, two tests have emerged: the Brunner Test ("Brunner") and the Totality of the Circumstances Test ("TOC"). These two tests are supplemented with wide disagreement over whether courts are permitted to discharge one of several loans, a practice known as "partial discharge."

10. After Brunner and TOC had established the meaning of "undue hardship," Congress amended section 523(a)(8) in two chief ways: (1) abolishing the five year time frame and making student loans non-dischargeable in perpetuity; and (2) adding subsection 523(a)(8)(B) which excepted from discharge qualified private student loans. The problem with these amendments is that the "undue hardship" standards were created when courts were only charged with determining whether repayment of federally insured loans with capped interest rates during the first five years would constitute an undue hardship. Both Brunner and the Totality of the Circumstances test are therefore incredibly harsh because courts knew that after five years, the debt could be discharged without any showing of additional financial strain whatsoever.

11. Although Brunner/TOC is binding precedent in this Circuit, Plaintiff humbly prays that this Court reconsider the applicability of that precedent given the changing legal landscape of section 523(a)(8) since the time Brunner/TOC was enacted. Other Circuits have re-examined and rejected the harshness of Brunner in recent years. Plaintiff understands the options presented by Income Contingent Repayment but at 63 years of age, she is not able to work long enough to achieve foregiveness nor even be certain that she will be able to re-apply annually in order to comply with those requirements.

B. **Plaintiff Files For Bankruptcy**

12. Plaintiff borrowed $77,600 from Defendants in order to attend Baldwin Wallace College, Cleveland State University, and Cuyahoga Community College between 2008 and 2015. She never completed a degree program, due to health and hardship issues during her college education. As a result she derived little to no economic benefit from her student loans.

13. Owing to circumstances beyond her control, Plaintiff filed for bankruptcy in this Court on April 22, 2021.

14. Plaintiff's combined student debt is now $77674. Plaintiff's current income is $1800 per month.

15. Plaintiff's student loans have been on deferment due to the Covid-19 pandemic. Her student loan debt in repayment would cost her approximately $911 each month, which is a clear, undue hardship that would leave Plaintiff without funds to live or pay customary monthly expenses for rent and food.

16. Plaintiff's student loan repayments would constitute 50 % of Plaintiff's take home pay. Plaintiff is now 63 years old, and there is no feasible way that she could ever repay or even significantly reduce her student loan obligations. If Plaintiff continued to work for another 10 years, which is unlikely given her age and health, and tried to pay her loans on a 10 year amortization schedule she would not have funds left to pay for rent and food.

17. Plaintiff cannot enter into an Income contingent repayment plan ("ICRP") that would meaningfully address or impact her student loan debt. It would be a vain act as she runs a deficit in her monthly expenses without any student loan repayment. Thus an ICRP would impose undue hardship of annually filing for certification and yet would yield no net benefit to Defendant. The law should not compel a vain act when its equitable powers can resolve this matter with no damage to the Defendant.

V.

**CLAIMS FOR RELIEF**

### A. Count One: Determination of Dischargeability

17. Plaintiff re-alleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

18. Plaintiff is entitled to discharge of her student loan debt in whole because repayment would constitute an "undue hardship"; Plaintiff cannot maintain a minimal standard of living while repaying student loan debt; her financial situation at age 63 is likely to stay the same and then worsen if she stops working, and there is no evidence of bad faith on her part as she has never completed her degree nor had sufficient income to make payments on her student loan debt..

19. Plaintiff meets the standard for undue hardship as articulated in *Brunner/Totality of the Circumstances*.

20. Accordingly, Plaintiff prays this Court discharge his/her private student debt in part or in total.

## VI.

## JURY DEMAND

21. Pursuant to his/her rights under Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## VII.

## PRAYER

22. In light of the foregoing, Plaintiff requests that Defendants be cited to appear and judgment be entered against Defendants for:

    (1) declaratory and injunctive relief;

    (2) determination of dischargeability;

    (3) other such relief as the Court deems just and proper.

Respectfully submitted,

/s/ Michael Shaut
Michael Shaut
Attorney for Plaintiff